PAUL E. POTTER   SBN 93002
POTTER, COHEN & SAMULON
3852 East Colorado Boulevard
Pasadena, California  91107
(626) 795-0681 Tel
(626) 795-0725 Fax
ppotter@pottercohenlaw.com

Attorney for Defendant
**ROMAN AGUAYO**

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br><br>v.<br><br>ROMAN AGUAYO,<br>Defendant. | CASE NO.:  CR12-1118-DMG<br><br>**DEFENDANT ROMAN AGUAYO'S POSITION WITH RESPECT TO SENTENCING**<br><br>DATE:  SEPTEMBER 25, 2013<br>TIME:   3:30 p.m.<br>JUDGE:  HONORABLE DOLLY M. GEE |

TO THE HONORABLE DOLLY M. GEE, UNITED STATES DISTRICT JUDGE AND TO REEMA M. EL-AMAMY, ASSISTANT UNITED STATES ATTORNEY:

Defendant ROMAN AGUAYO by his attorney, Paul E. Potter, presents the following with respect to the sentencing factors in this case.

DATED: September 4, 2013                    Respectfully submitted,


                                            /s/ Paul E. Potter
                                            Paul E. Potter
                                            Attorney for Defendant
                                            **ROMAN AGUAYO**

1

# SENTENCING MEMORANDUM

# INTRODUCTION

### A.

This case calls on the Court to address and answer two questions:

1. How long a sentence is sufficient but not greater than necessary?
2. What are the parameters of sentences previously given in similar cases, which the Court will use to define the universe of "unwarranted disparities?"

MR. AGUAYO asks the Court to sentence him to 72 months, six years in prison, which would be the statutory minimum for the 924(c) offense to which he pleaded guilty plus twelve months for the virtual crime to which the 924(c) attaches. This is the low end of his plea agreement with the Government.

As a matter of legal principles, he grounds his request in 18 U.S.C. § 3553(a), instructing district courts to "impose a sentence sufficient, but not greater than necessary" to accomplish the goals of sentencing and on Nelson v. United States (2009) 555 U.S. 350, 129 S.Ct. 890, which clearly establishes that the Sentencing Guidelines have no presumptive weight.

As a matter of factual support, he also grounds his request in Nelson, supra, and in 18 U.S.C. § 3553(a), instructing district courts to consider the history and characteristics of the defendant.

He relies on the facts of the offense; a sting mounted entirely by the Government, in which there never was a stash house, nor were there ever any drugs to

steal or drug dealers to steal them from; on his role in the offense, the last man in and the odd man out; and, on his personal situation, which made him particularly vulnerable to the chimera of a successful crime.

The author of the Pre Sentence report has asked the Court to sentence Mr. AGUAYO to 111 months in prison. We take issue with the way in which the author of the Pre-Sentence Report calculated Mr. AGUAYO's Criminal History.

We also believe that the author of the Pre-Sentence Report has treated the incidents of Mr. AGUAYO's abandonment in early adolescence as factors in aggravation, rather than as demonstrative evidence of that abandonment, which we ask the court to view as mitigation.

The PSR contains duplicative (actually triplicative) attributions of Mr. AGUAYO's juvenile court cases, which leads to a clear overstatement of Mr. AGUAYO's Criminal History.

We hope that the analysis we present below will convince the Court that the calculation of a Criminal History level is both incorrect and a significant overstatement of the true import of Mr. AGUAYO's past behavior as a matter of Advisory Guidelines Law.

That being said, the focus of Mr. Aguayo's pleading is 18 U.S.C. § 3553(a), which provides that the court must select a sentence, which is sufficient, but not greater than necessary to accomplish the sentencing goals advanced in § 3553(a)(2).

When viewed in this light, the Probation Officer's requested 111 month sentence is unreasonable and would work an unwarranted disparity from the sentences given other similar defendants.

We ask the Court to sentence Mr. AGUAYO to 72 months, the minimum sentence called for by his plea agreement.

### B.

Mr. AGUAYO pleaded guilty to the charges brought by the United States Attorney. The factual basis for that plea, contained in his plea agreement states, inter alia, that on November 7, 2012, defendant and two coconspirators met with the UC at a warehouse. To this meeting, the defendant brought a firearm, namely a loaded Smith & Wesson, .22 caliber semi-automatic pistol, which defendant intended to use during the planned robbery of a "stash house". In addition, two of defendant's coconspirators also brought loaded firearms to the meeting and for the same purpose. At this meeting, defendant and his co-conspirators finalized the details of the robbery, previously planned by the UC and his co-conspirators.

Mr. AGUAYO knew that at least some of his co-conspirators had previously met with the UC and that the robbery would involve the taking of cocaine for further distribution.

The Pre-Sentence Report instructs us that Mr. AGUAYO was born on August 22, 1992, in Los Angeles, California. From birth to the age of 9, Mr. AGUAYO lived with his parents. During this period his father began beating Mr. AGUAYO's sister with a wire hanger on a regular basis. After his parents separated Mr. AGUAYO started living part-

time with his father and part-time with his mother. For 9 years he moved back and forth between his father and stepmother's homes. His family was poor (and apparently quite self-absorbed) from ages 5 to 13, he would go to bed hungry on a regular basis because he did not have enough food to eat. He reported that he always had at least one set of clothes to wear and a place to sleep. However, he many times had to sleep in a basement in the same bed as his sister. (PSR paragraph 75)

From the age of 18 onward, he has lived with his girlfriend and the mother of his child, who also appears to have had a similarly difficult childhood.

## FACTORS THAT SHOULD BE CONSIDERED IN SENTENCING MR. AGUAYO

For a time, sentencing advocacy under the now advisory Guidelines presented Counsel with all of the difficulties inevitably associated with an unsettled and rapidly evolving body of law. Certain general principles have, however, emerged to the point where they can be urged as accurate.

The advisory guideline range is not to be treated as a presumptive sentence. The guideline range is simply one factor to be considered when selecting the most appropriate sentence for a particular defendant. The District Court must use the advisory Guideline calculation as a starting point for its determination of an appropriate sentence, but the District Court must not accord the Advisory Guideline Range any greater weight than it accords the other factors found in 18 USC § 3553(a). Not only is there nothing in § 3553, as it stands after United States v. Booker, 543 U.S. 220 (2005), to indicate that the Guidelines are to be given any greater weight than other sentencing

factors, but to remove any lingering doubt, the United States Supreme Court has so stated with absolute clarity in in <u>Nelson v. United States.</u>

> The Guidelines are not only not mandatory on sentencing courts; they are also not to be presumed reasonable. We think it plain from the comments of the sentencing judge that he did apply a presumption of reasonableness to Nelson's Guidelines range. Under our recent precedents, that constitutes error. <u>Nelson v. United States</u> (2009) 555 U.S. 350, 129 S. Ct. 890.

## APPLYING THESE CHANGES TO MR. AGUAYO'S SENTENCE

## THE GUIDELINES

Since the Guidelines continue to be the starting point for judicial evaluation of a proper sentence, Mr. AGUAYO starts here, too. The author of the Pre-Sentence Report has set the Guideline Calculation at level 21, less three points for acceptance of responsibility. He applies this vertical scale calculation to a criminal history of V on the horizontal scale. This leads him to calculate a range of 51 to 63 months before imposition of the mandatory consecutive 60 months for violation of 18 U.S.C. § 924 (c)

In the Plea Agreement we read:

15. Defendant and the USAO agree to the following applicable Sentencing Guidelines factors:
Base Offense Level      20      [U.S.S.G. § 2B3.l(a)]

| | | |
|---|---|---|
| Specific Offense Characteristics (Drugs Object of Conspiracy) | +1 | [U.S.S.G. § 2B3.1(b) (6)] |

Defendant and the USAO reserve the right to argue that additional specific offense characteristics, adjustments, and departures under the Sentencing Guidelines are appropriate.

17. Taking into account the factors set forth in 18 U.S.C. § 3553 (a) (1), (a) (2), (a) (3), (a) (6), and (a) (7), defendant reserves the right to argue for a sentence outside the sentencing range established by the Sentencing Guidelines, but in no event for a sentence of imprisonment below 72 months. The USAO agrees that, taking into account the same § 3553(a) factors listed above, and, in particular § 3553(a) (6), it will not argue for a sentence of imprisonment in excess of 110 months.

## CRIMINAL HISTORY CATEGORY V IS THE RESULT OF AN INCORRECT APPLICATION OF THE SENTENCING GUIDELINES, WHICH IN ANY EVENT OVERSTATES MR. AGUAYO'S CRIMINAL HISTORY

Placement in Category V is both incorrect and unreasonable. It inflates and distorts Mr. ROMAN AGUAYO'S criminality. At Paragraph 43 of the PSR the Probation Officer correctly begins his discussion of the criminal history section of his report by noting that:

7

Pursuant to United States v. Booker, 543 U.S. 220, 125 S. Ct. 738 (2005), the Court should consider the following criminal history category calculation to be advisory.

That being the case, what follows may well seem like an exercise in art for art's sake, but we must insist that the Probation Officer's grant to Mr. AGUAYO of 10 Criminal History Points is erroneous. Mr. AGUAYO is entitled to a maximum, under any theory, of only 6 Criminal History points and his history category, before any further adjustment is III, which parenthetically, although we maintain it is still too high, comes much closer to an accurate portrait of his "criminal career."

## OVERSTATEMENT OF MR. AGUAYO'S CRIMINAL HISTORY

### TRIPLE COUNTING THE KJ27554 CASE(S)

The argument against the triple-counting of the sentence(s) in the KJ27554 case(s) in the Los Angeles County Juvenile Court is quite compelling.

U.S.S.G. § 4A1.2(c)(2) has always permitted the trial court to depart downward if the defendant's criminal history category is over-representative, i.e. that it overstates the seriousness of the defendant's criminal history.

In <u>United States v. Kortegaard</u>, 425 F.3d 602 (9th Cir. 2005) which was sentenced in the trial court pre-Booker, but heard in the Court of Appeals after Booker was decided, the Court recognized that under § 4A1.3, a court's determination of the

"seriousness" of a defendant's past criminal misconduct, the decisive factor "is the quality of the defendant's criminal history, not the quantity." Id. at 608, citing United States v. Segura-Del Real, 83 F.3d 275, 277 (9th Cir. 1996).

We start with the Guidelines themselves, specifically Sect. 4A1.2(d)

Offenses Committed Prior to Age Eighteen

(1) If the defendant was convicted as an adult and received a sentence of imprisonment exceeding one year and one month, add 3 points under §4A1.1(a) for each such sentence.

(2) In any other case,

(A) add 2 points under §4A1.1(b) for each adult or juvenile sentence to confinement of at least sixty days if the defendant was released from such confinement within five years of his commencement of the instant offense;

(B) add 1 point under §4A1.1(c) for each adult or juvenile sentence imposed within five years of the defendant's commencement of the instant offense not covered in (A).

The question here is whether the potential aggregation of juvenile sentences under the California Welfare and Institutions Code constitutes a sentence imposed, especially when information is not available on the particulars of arrest or disposition on any of the point-garnering juvenile cases (which we insist is only one case) anywhere in the PSR.

As a separate matter, the nature of the offenses themselves and the plain language of the California Welfare and Institutions Code requires us to propose a more general discussion of overrepresentation.

§ 203. Order adjudging minor ward of court is not constituting conviction; Noncriminal nature of proceeding

An order adjudging a minor to be a ward of the juvenile court shall not be deemed a conviction of a crime for any purpose, nor shall a proceeding in the juvenile court be deemed a criminal proceeding. Cal Welfare & Institutions Code § 203 (2012)

That juvenile adjudications should not count as criminal convictions because they aren't is an argument that was made without success in the days of the mandatory Guidelines. Now that the Guidelines are no longer mandatory, he asks the court to re-visit this issue. Regardless; however, Mr. AGUAYO insists that he should not receive 10 criminal history points, what he would be given for three serious adult felonies after jury trials, based in large part on the aggregate misfortunes of a difficult and semi abandoned childhood and early adolescence, which were heard in a system with no right to a jury trial, by a bench officer whose decisions, by State law "shall not be deemed a conviction of a crime for any purpose."

The first juvenile sustained KJ27554 petition for which 2 points were awarded occurred in 2008 when Mr. AGUAYO was 15 years old. The charge was attempted theft. According to the author of the pre-sentence report additional information is not available on this arrest or its disposition. (paragraphs 47-48)

The next juvenile sustained KJ27554 petition for which 2 points were awarded occurred in 2009 when Mr. AGUAYO was 16 years old. The charge was carrying a dirk or a dagger. According to the author of the pre-sentence report additional information is not available on this arrest or its disposition. (paragraphs 49-50)

The last juvenile sustained KJ27554 petition for which only 1 point was awarded occurred in 2010 when Mr. AGUAYO was 17 years old. The charge was possession of less than an ounce of marijuana. Mr. Aguayo was fined. No other details are provided. (Paragraphs 51-52)

California Welfare and Institutions Code, §777, permits a Juvenile Court Judge or Referee to impose the remaining time available from any previously sustained 602 petition.

In determining the maximum period of confinement, the juvenile court may consider the minor's entire record. (In re Michael B., supra, 28 Cal. 3d at p. 553.) As a yardstick, the most serious offense committed by the minor may be taken into account. (Cf. In re Aaron N. (1977) 70 Cal. App. 3d 931, 939 [139 Cal.Rptr. 258].) Where a minor commits more than one offense, any offense "may serve as a measurement for [the minor's] physical confinement." (Ibid.) The maximum length of confinement may be measured by the most serious offense, even if the most serious offense is a previous offense. (Id. at pp. 939-941.) In re: Adrian R. (2000) 85 Cal. App.4th 448 (102 Cal. Rptr. 2d 173).

The information in the PSR referencing the three KJ 27554 petitions does not answer the aggregation question as a matter of strict legal interpretation because in none of these matters are we provided any information, save that "additional information is not available on this arrest or its disposition". The over representation question remains open (and here we are still just discussing the Advisory Guidelines, we have yet to turn our attention to 18 USC § 3553); indeed the inclusions and the absences in the PSR seem to favor our over representation argument.

Both Mr. AGUAYO'S personal history and the California statutory scheme for juvenile offenders suggest that these petitions should not result in separate additions to criminal history.

Mr. AGUAYO argues that his criminal history is overrepresented by at least two levels, as presented by the author of the Pre-Sentence Report, which is the result of the treble counting of the Petitions adjudicated in the KJ27554 wardship file.

## THE NATURE OF THE ADULT CASES

Mr. AGUAYO's adult criminal history is set out at paragraphs 53, 55 and 57 of the P.S.R. He has two misdemeanor violations of a gang injunction and a fight with the mother of his child, with whom he is completely reconciled and to whom he is very dedicated. He also has two recency points. When these are added to the juvenile points discussed above, he is placed in the Advisory Criminal History category of V, only one step below a maximum history category of VI. His placement there over-inflates who he is, and it dilutes the meaning of category VI beyond recognition.

## 18 USC §3553 ANALYSIS

First, we ask the Court to deem all of the Arguments above focused on Criminal History, in a Guidelines context, to be repeated here as part of our §3553 argument. As a further part of our §3553 argument we will try to offer a more complete picture of just who is ROMAN AGUAYO.

18 U.S.C. § 3553(a) provides that must select a sentence, which is sufficient, but not greater than necessary to accomplish the sentencing goals advanced in § 3553(a)(2), *i.e.* "to reflect the seriousness of the offense," "to promote respect for the

law," "to provide just punishment for the offense," "to afford adequate deterrence to criminal conduct," and "to protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a).

18 U.S.C. § 3553(a)(1) further provides that, in determining the appropriate sentence, the court shall the nature and circumstances of the offense and the history and characteristics of the defendant.

## HISTORY AND CHARACTERISTICS OF THE DEFENDANT

## ABANDONMENT IN EARLY ADOLESCENCE, A FACTOR IN MITIGATION

The author of the Pre-Sentence Report describes in Paragraph 75 an absolutely traumatic childhood. It should surprise no one that Mr. AGUAYO gravitated to the gang life. In Paragraph 75 the Probation Officer's need to quantify the episodes of Mr. AGUAYO's traumas in order to believe that they really happened stands out. That he witnessed his father beating his sister with a hangar is meaningless, unless he can specify a frequency in days, weeks and months. Likewise, hunger isn't hunger without a calendar upon which it's frequency is memorialized. And this by a 5 year old boy!

Negative, aggravating episodes, on the other hand, require no quantification. Mr. AGUAYO has violent tendencies because he "jumped in" other gang members, without further detail. Mr. AGUAYO's attempts to come to terms with the wreckage of his youth (see attached exhibits) pass either unmentioned, or almost unmentioned. The fact that his case with the mother of his daughter went to warrant is offered as showing a likelihood of recidivism. As the attached docket shows, that case went to warrant because he was detained on this one and couldn't make his appearance on that one.

Hardly an indicator of anything save that Federal detainees can't appear in State Court on their misdemeanors. (Recommendation Letter)

## DISPARITY AND THE CRIME

Any discussion of sentencing disparity must begin with a discussion of the groups or sets against which conformity or disparities are to be measured. Is the measurement in this case to be made against all "stash house" cases? We have attached a spread sheet prepared by the Government for a pending sentencing in one of those cases, which provides a good, *albeit* partial overview of what has happened in those cases in the Central District.

Is it to be made against the sentences given only in this particular case? The superseding Indictment, which remains to be litigated may make that a speculative venture.

We cannot ask the Court to asses Mr. AGUAYO against a group of other 20 year old defendants suffering the sequelae of chronic, abusive, trauma during adolescence precisely because that experience cannot be quantified.

The group against which disparity and conformity are to be assessed must be large enough to offer a meaningful sample, it must include enough offenders, whose life histories are substantially similar and enough cases where the charged participation was also substantially similar.

DEFENDANT ROMAN AGUAYO'S POSITION WITH RESPECT TO SENTENCING

Counsel suggests that in this case, for the purposes of disparity the Government's spread sheet is the best we are going to have. The Probation Officer, in recommending a low end criminal history level V sentence offers the need to avoid unwarranted disparity as one ground in support of his recommended 111 month sentence.

> "A sentence within the advisory guideline range will also help to avoid unwarranted sentencing disparity" (Recommendation letter)

Mr. AGUAYO argues that the over inflation of his criminal history make the Guidelines a source of unwarranted disparity, rather than a defense against it. He asks the Court to compare him to other defendants in the charged cases on that spread sheet, (several of whom Counsel has also represented). When the Court considers his youth and his role in the offense, the Court should place him at the low end of his Plea Agreement range.

## CONCLUSION

MR. AGUAYO takes responsibility for his crimes and understands that he must be punished. He also understands what he needs to do to become a productive, law-abiding citizen.

His plea in the instant matter will separate him from this environment for at least six years. The question before the court is how much more, if anything, is required to satisfy the goals of sentencing?

DEFENDANT ROMAN AGUAYO'S POSITION WITH RESPECT TO SENTENCING

MR. AGUAYO respectfully asks the Court to sentence him to no more than 72 months in Prison.

DATED: September 4, 2013                    Respectfully submitted,


                                            /s/ Paul E. Potter
                                            Paul E. Potter
                                            Attorney for Defendant
                                            **ROMAN AGUAYO**

**PROOF OF SERVICE BY MAIL**

STATE OF CALIFORNIA       )
                          ) ss
COUNTY OF LOS ANGELES     )

I, ISELA MARQUEZ, am employed in the County of Los Angeles, State of California. I am over the age of eighteen and not a party to this action. My business address is 3852 East Colorado Boulevard, Pasadena, California 91107.

On September 4, 2013, I served the following document described as:

**DEFENDANT ROMAN AGUAYO'S POSITION WITH RESPECT TO SENTENCING**

on all interested parties by placing a true and correct copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, in the United States Post Office mail at Los Angeles, California, addressed as follows:

Reema Al-Amamy
Assistant United States Attorney
1200 United States Courthouse
312 North Spring Street
Los Angeles, CA 90012

ROMAN AGUAYO
Register No. 63940-112
Metropolitan Detention Center
P.O. Box 1500
Los Angeles, CA 90053

Robert Klepa
United States Probation Officer
United States Courthouse
312 North Spring Street, 6th Floor
Los Angeles, CA 90012

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct, executed on September 4, 2013 at Pasadena, California.

/s/ Isela Marquez
ISELA MARQUEZ