JOHN N. McNICHOLAS, ESQ.
STATE BAR #138304
McNicholas Law Office, LLC
464 Palos Verdes Blvd.,
Redondo Beach, CA 90277
(310) 545-0780
(310) 546-6831- FAX
john@mcnicholaslawoffice.com
Attorney for GEORGE VERA, SR.

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>GEORGE VERA, SR.,<br>Defendant. | Case No. CR 12-1118(A)-DMG<br><br>**DEFENDANT GEORGE VERA, SR.'S BRIEF REGARDING GOVERNMENT REQUEST FOR REMAND PENDING SENTENCING**<br><br>Date:     6/1/2016<br>Time:    10:30 a.m. |

COMES NOW Defendant, GEORGE VERA, SR. ("VERA, SR."), by and through

his counsel, JOHN N. McNICHOLAS, who respectfully files this brief in opposition to

government request that he be immediately remanded into custody following a guilty verdict

to the charge of possession of a firearm in furtherance of a crime of violence, in violation of

18 U.S.C. § 924(c). evidence.

This opposition is made and based on the attached Memorandum of Points and

1

1   Authorities, the papers and pleadings on file herein, and any oral argument that may be

2   heard by this Court.

3

4          Dated this 20th day of May, 2016.

5                                      McNICHOLAS LAW OFFICE, LLC

6                                      By:_____/s/_____

7                                      JOHN N. MCNICHOLAS, ESQ.
                                       464 Palos Verdes Blvd.
8                                      Redondo Beach, CA 90277
                                       Attorney for GEORGE VERA, SR.
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS.

MEMORANDUM OF POINTS AND AUTHORITIES............  ...............................................1

I. PROCEDURAL HISTORY....................................................................................1

II. ARGUMENT....................................................................................................1

A. A "substantial question" is one that is "fairly debatable." ......................................1

B. Government Argument for Remand ........................................................................3

C.  The Court, Not the Parties, Controls the Applicable Law ......................................4

D. Possible sentence for 924(c) conviction .................................................................5

E. 18 U.S.C. § 924(c)...........................................................................................5

F. Vera Sr's Section 924(c) Conviction Must Be Vacated because the Predicate Offense, RICO

Conspiracy, Is Not a Crime of Violence..........................................................................7

1. Following Johnson, RICO Conspiracy Does Not Qualify as a Crime of Violence under the

Residual Clause because that Clause Is Void for Vagueness..........................................8

2. RICO Conspiracy Is Not a Crime of Violence under the  Force Clause................................10

3. RICO Conspiracy Does Not Have, as an Element, the Use or Threatened Use of Physical

Force. ...............................................................................................................12

G.      Facts Insufficient to Prove that VERA, SR. joined a RICO

Conspiracy........................................................................................................14

1.  924(c): No Possession of A Firearm .................................................................15

2.  Possession Of The Firearm Must Be In Furtherance of the Crime of Violence ....................18

H. George Vera Poses No Threat To The Community ................................................21

III. CONCLUSION ..........................................................................................22

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

Federal Cases

Arcadia v. Ohio Power Co., 498 U. S. 73, 498 U. S. 77 (1990)....................................................4

Barefoot v. Estelle, 463 U.S. 880, 103 S.Ct. 3383, 77 L.Ed.2d 1090 (1983)................................ 2

Bowen v. Johnston, 306 U. S. 19, 306 U. S. 23 (1939) ..................................................................4

Delgado-Hernandez v. Holder, 697 F.3d 1125 (9th Cir. 2012).................................................... 10

Descamps v. United States, 133 S. Ct. 2276 (2013)......................................................................10

Dimaya v. Lynch, 803 F.3d 1110 (9th Cir. 2015)...........................................................................9

James v. United States, 550 U.S. 192 (2007)..................................................................................9

Harris v. United States,  536 U.S. 545 (2002)................................................................................ 5

 Johnson v. United States,  135 S. Ct. 2551 (2015)..................................................................passim

Johnson v. United States, 559 U.S. 133 (2010) (Johnson I)........................................................ 11

Kamen v. Kemper Financial Services., Inc., 500 U.S. 90 (1991)....................................................4

Leocal v. Ashcroft,543 U.S. 1 (2004).............................................................................................11

Rodriguez-Castellon v. Holder, 733 F.3d 847 (9th Cir. 2013)......................................................12

Salinas v. United States, 522 U.S. 52 (1997)................................................................................12

Sanford's Estate v. Commissioner of Internal Revenue, 308 U.S. 39 (1939)................................4

Stewart v. Beto, 454 F.2d 268 (5th Cir.1971)................................................................................3

Sykes v. United States, 131 S. Ct. 2267 (2011)..............................................................................9

Taylor v. United States, 495 U.S. 575 (1990)..........................................................................10, 11

United States v. Amparo, 68 F.3d 1222 (9th Cir. 1995)................................................................10

United States v. Aragon, 983 F.2d 1306 (4th Cir. 1993)............................................................... 10

United States v. Baza-Martinez, 464 F.3d 1010 (9th Cir. 2006)...................................................11

United States v. Bell,2016 WL 344749 (N.D. Cal. Jan. 28, 2016)......................................... 10

United States v. Bibler, 495 F.3d 621 (9th Cir. 2007).............................................................

United States v. Chandler, 743 F.3d 648 (9th Cir. 2014 .....................................................12, 13

United States v.Chimurenga, 760 F.2d 400 (2d Cir. 1985) ........................................................7

United States v. Dare, 425 F.3d 634, 642 (9th Cir. 2005) ..........................................................5

United States v. Dean, 13-137-SI (D. Ore. March 15, 2016).....................................................

United States v. Doe, 49 F.3d 859 (2d Cir. 1995) ......................................................... 7

United States v. Edmundson, _F. Supp. 3d _, 2015 WL 9582736 (D. Md. Dec. 30

2015)......................................................................................................................10, 12, 13

United States V. Garcia, 340 F.3d 1013 (9th Cir. 2003).  ..........................................................3

United States v. Gore, 636 F.3d 728 (5th Cir. 2011)...............................................................13

United States v. Grajeda, 581 F.3d 1186 (9th Cir. 2009)...........................................................11

United States v. Handy, 761 F.2d 1279 ( 9th Cir. 1985)........................................................ 2, 3, 22

United States v. Hector  474 F.3d 1150 (9th Circuit 2007).......................................................... 19

 United States v. Juvenile Female, 566 F.3d 943 (9th Cir. 2009)...................................................8

United States v. Juvenile Male, 118 F.3d 1344 (9th Cir. 1997)...................................................7, 8

 United States v. Krouse, 370 F.3d 965 (9th Cir. 2004) ........................................................ 18

United States v. Luong, Case No. CR 99-00433, 2016 WL 1588495 (E.D. Cal. Apr. 20,

2016)........................................................................................................................13

United States v. Mann, 389 F.3d 869 (9th Cir. 2004) ........................................................ 18

United States v. Mendez, 992 F.2d 1488 (9th Cir. 1993)...........................................................7, 10

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States v. Miller, 753 F.2d 19, 23 (3rd Cir. 1985)..............................................................3

United States v. Piccolo, 441 F.3d 1084 (9th Cir. 2006)............................................................10

United States v. Rios, 449 F.3d 1009 (9th Cir. 2006) ................................................................18

United States v. Scott, 642 F.3d 791 (9th Cir. 2011).................................................................. 7

United States v. Torres-Miguel, 701 F.3d 165 (4th Cir. 2012).................................................11

United States v. Vivas-Ceja, 808 F.3d 719 (7th Cir. 2015).........................................................9

United States v. White, 571 F.3d 365 (4th Cir. 2009)...........................................................12, 13

Federal Statutes

8 U.S.C. § 1101.............................................................................................................................9

18 U.S.C. § 16.........................................................................................................................8, 9

18 U.S.C. § 371..........................................................................................................................12

18 U.S.C. 921.............................................................................................................................21

18 U.S.C. § 924....................................................................................................................passim

18 U.S.C. § 1961........................................................................................................................12

18 U.S.C. § 1962..................................................................................................................passim

18 U.S.C. § 3142........................................................................................................................21

18 U.S.C. § 3143..................................................................................................................1, 2, 21

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. PROCEDURAL HISTORY

On May 6, 2016, a jury returned a verdict of guilty to count one, 18 U.S.C. § 1962(d), racketeering conspiracy, not guilty to count 2, 21 U.S.C. § 846, drug trafficking conspiracy,  and guilty to count 3, 18 U.S.C. § 924(c), finding that Vera, Sr. possessed a firearm in furtherance of a racketeering conspiracy, a crime of violence.

The government asked for immediate remand of Vera, Sr. to custody following the split verdicts based upon the argument that a conviction for violating 18 U.S.C. § 924(c) carries a potential sentence of life imprisonment. The government now argues that the Court must remand Vera, Sr. based upon the jury's guilty verdicts on the 18 U.S.C. § 1962(d) charge and the 18 U.S.C. § 924(c) charge, unless 1) the Court finds that there is a substantial likelihood that a motion for acquittal or new trial will be granted and 2) the Court finds by clear and convincing evidence that Vera, Sr.  is not likely to flee or pose a danger to any other person in the community.  18 U.S.C. § 3143(a)(2)(A)(i) and (B).[1]

## II. ARGUMENT

### A.  A "Substantial Question" Is One That Is "Fairly Debatable."

The questions  which need to be answered in assessing whether to remand Vera, Sr. include:

1) Was Vera, Sr. Convicted of a crime of violence?

2) Was Vera, Sr. Convicted of a crime involving a potential life sentence?

---

[1] 18 U.S.C. § 3143(a)(2)(A)(ii) allows defendant to remain on bail if the government does not seek imprisonment.

1

If either apply, then the standard for release is whether there is a "substantial likelihood that a motion for acquittal or new trial will be granted." 18 U.S.C. § 3143(a)(1). The Bail Reform Act of 1984 ("The Act") is codified at 18 U.S.C. §§ 3141-3150.

The Ninth Circuit has defined "substantial likelihood" as stated in 18 U.S.C. § 3143. The definition is far less stringent standard than the government would like.  The issue of when to remand a defendant to custody following conviction was addressed in *United States v. Handy*, 761 F.2d 1279 ( 9ᵗʰ Cir. 1985).  In *Handy*, an appellee's motion for bail pending appeal required an interpretation of an important provision of the Bail Reform Act of 1984.  The Act provides that a defendant who has been convicted and sentenced to a term of imprisonment shall be detained pending appeal unless the court finds "that the person is not likely to flee or pose a danger to the safety of any other person or the community if released" and "that the appeal is not for purpose of delay *and raises a substantial question of law or fact* likely to result in reversal or an order for a new trial." 18 U.S.C. § 3143(b). *Id.* at 1279-80.

The Supreme Court has reiterated that a "substantial question" is one that is "fairly debatable." In *Barefoot v. Estelle*, 463 U.S. 880, 103 S.Ct. 3383, 77 L.Ed.2d 1090 (1983), when discussing the level of merit required in a habeas appeal involving a death penalty, the Supreme Court noted that a "`substantial showing of the denial of [a] federal right,'" 103 S.Ct. at 3394 (*quoting Stewart v. Beto*, 454 F.2d 268, 270 n. 2 (5th Cir.1971), cert. denied, 406 U.S. 925, 92 S.Ct. 1796, 32 L.Ed.2d 126 (1972)), is "`something more than the absence of frivolity,'" *Id.*

The first circuit to construe the term "substantial question" in the Act we are considering — the Third Circuit — held that it should be given its historic meaning. In *United States v. Miller* the Third Circuit said that "substantial question" is one that is "fairly doubtful." 753 F.2d 19, 23 (3ʳᵈ

Cir. 1985). According to the Ninth Circuit, that definition is synonymous with "fairly debatable." *Handy* at 1279-80.

Vera, Sr., in other words, need not, under *Handy*, present an argument that will likely be successful. Vera, Sr. must only present a non-frivolous issue that, if decided in the defendant's favor, would likely result in the granting of his motion or could satisfy one of the other conditions. Because under § 3143(a)(2)(A) a defendant need not show a likelihood of success on his motion for judgment of acquittal, a defendant who does show such likelihood goes well beyond the threshold requirement.  *See also United States V. Garcia*, 340 F.3d 1013 FN 5 (9th Cir. 2003).

### B.  Government Argument for Remand

The government asserts its position that Vera, Sr. must be remanded to custody upon 1) a RICO conspiracy being a crime of violence and 2) a sentence under 18 U.S.C. § 924(c) carries a potential sentence of life imprisonment:

> As it happens, § 3142(f)(1) includes both of the offenses for which defendant was convicted. First, it enumerates, in § 3142(f)(1)(A), mandatory remand for a "crime of violence," and as both parties agreed in the jointly submitted jury instructions, RICO conspiracy is a crime of violence. See CR 879, No. 45, at 49; *United States v. Mendez*, 992 F.2d 1488, 1492 (9th Cir. 1993). Second, § 3142(f)(1)(B) encompasses any "offense for which the maximum sentence is life imprisonment," which is true of defendant's conviction under 18 U.S.C. § 924(c). *See, e.g., United States v. Mayweather*, 634 F.3d 498, 506 (9th Cir. 2010).

Government brief at pages 1-2. Based on recent developments in the law addressing the precise issues addressed herein, Vera, Sr.'s conduct is not considered "a crime of violence." Additionally, the factual arguments presented, i*nfra*, are more than "fairly debatable" on both Counts one and three, which if argued successfully, could lead to a judgment of acquittal or new trial on counts one and three.

### C.  The Court, Not the Parties, Controls the Applicable Law

The Supreme Court has repeatedly said: "We are not bound to accept, as controlling, stipulations as to questions of law." *Sanford's Estate v. Commissioner of Internal Revenue*, 308 U.S. 39, 51 (1939); Nor will courts accept as binding stipulations regarding legal methodology – that is, how courts will determine applicable law. Instead, "When an issue or claim is properly before the court, the court is not limited to the particular legal theories advanced by the parties, but rather retains the independent power to identify and apply the proper construction of governing law." *Kamen v. Kemper Financial Services., Inc.*, 500 U.S. 90, 99 (1991). *See, e.g., Arcadia v. Ohio Power Co.*, 498 U. S. 73, 498 U. S. 77 (1990). The law, whether depending upon statutes or upon judicial opinions, is a matter of which the courts of the United States are bound to take judicial notice, without plea or proof.  *Bowen v. Johnston*, 306 U. S. 19, 306 U. S. 23 (1939).

If the government truly believed that Vera, Sr.'s a conviction under 18 U.S.C. § 1962(d) were a crime of violence, it would not have recommended that Vera, Sr. and several other co-defendants in this case receive the benefit of the CASA program, which calls for probation of completed,  in exchange for a guilty plea to the charge.[2] Additionally, the government relies upon the "stipulation" by defense counsel to support its position that U.S.C. § 1962(d) is a crime of violence. Granted, defense counsel did not dispute the jury instruction proposed by the government which labels a conviction under 18 U.S.C. § 1962(d) as a crime of violence. Said instruction was submitted as a jointly proposed instruction.  But, the instruction is clearly in error, as the current

---

[2] Even if a conviction under 18 U.S.C. § 1962(d) required imprisonment, Vera, Sr. Has already served eighteen months in federal custody in this matter, which brings his time already served close to the recommended sentencing guideline level for this offense, without consideration of downward adjustments or departures.

4

law contradicts the legality of the instruction.

**D.   Possible Sentence for 924(c) Conviction**

18 U.S.C. § 924(c) is silent as to the maximum term of imprisonment. This issue is not settled, as the Supreme Court has not been clear as to whether it is simply an additional punishment, or a separate crime with an additional maximum penalty. However, following implication, *dicta* and language in a dissenting opinion in *Harris v. United States*,  536 U.S. 545 (2002),  the Ninth Circuit has held that a conviction under   18 U.S.C. § 924(c) carries a potential maximum sentence of life imprisonment.   *United States v. Dare*, 425 F.3d 634, 642 (9th Cir. 2005) "Thus, under *Harris*, the district court could have sentenced Dare to any sentence within the range of five years to life without further fact finding."*Id; see also Harris,* 536 U.S. at 574 (Thomas, J., dissenting).

Decisions in the United States Supreme Court and the Ninth Circuit Court of Appeals, discussed *infra* prove  that Vera, Sr. was not convicted of a crime of violence, and therefore cannot be guilty of 18 U.S.C. 924(c).

**E.   18 U.S.C. § 924(c)**

18 U.S.C. § 924(c)(1)(A)(i) provides:

> Except to the extent that a greater minimum sentence is otherwise provided by this subsection or by any other provision of law, any person who, during and in relation to any crime of violence or drug trafficking crime (including a crime of violence or drug trafficking crime that provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device) for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime –
> (i) be sentenced to a term of imprisonment of not less than 5 years;....

5

18 U.S.C. § 924(c)(3) states:

> For the purpose of this subsection the term "crime of violence" means an offense that is a felony and-
> (A) has an element the use, attempted use, or threatened use of physical force against the personal property of another, or
> (B) that by its nature, involves the substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

Section 924(c)(3)(A) – is commonly referred to as the "force clause."

Section 924(c)(3)(B) – is commonly referred to as the "residual clause."

To be convicted and sentenced under 18 U.S.C. Section 924(c), a defendant's instant offense must be a crime of violence or a drug trafficking crime. Here, the jury found that Vera, Sr. was not guilty of drug trafficking.  The jury found that Vera Sr.'s conviction for 18 U.S.C. § 1962(d) was a crime of violence under Section 924(c). After *Johnson v. United States*, 135 S. Ct. 2551 (2015) , Vera, Sr.'s instant offense no longer satisfies the definition of "crime of violence" in Section 924(c), and as such, the conviction under Section 924(c) should be set aside and Vera, Sr. should be acquitted of the charge.

*Johnson* Announced a New Rule of Constitutional Law.  First,  *Johnson's* rule is constitutional in nature. *Johnson* expressly holds that "imposing an increased sentence under the residual clause of the Armed Career Criminal Act violates the Constitution's guarantee of due process." 135 S. Ct. at 2563; see also *Id.* at 2557 ("Two features of the residual clause conspire to make it unconstitutionally vague."); *Id.* ("Increasing a defendant's sentence under the clause denies due process of law.").

In practice, a sentence under 924(c) operates the same way as an ACCA sentence; it

authorizes a mandatory consecutive sentence that would otherwise be impossible to impose. Thus, as with ACCA, "[a]fter *Johnson*, the same person engaging in the same conduct is no longer subject to the Act and faces at most [the sentence authorized under the underlying crime]." *Id.* And, as with ACCA, "'even the use of impeccable fact-finding procedures could not legitimate' a sentence based on that clause.'" *Id.* (citation omitted). For that reason, *Johnson* not only applies to Vera, Sr., who was found guilty by a jury, but it is also retroactive to individuals previously sentenced under 924(c).

### F.   Vera, Sr.'s Section 924(c) Conviction Must Be Vacated because the Predicate Offense, RICO Conspiracy,  Is Not a Crime of Violence.

Prior to Johnson, the Ninth Circuit had long held that RICO conspiracy was a crime of violence under the residual clause whenever the predicate racketeering activity the defendant agreed should be committed was a crime of violence. E.g., *United States v. Scott*, 642 F.3d 791, 801 (9th Cir. 2011) (citing to *United States v. Juvenile Male*, 118 F.3d 1344, 1350 (9th Cir. 1997), and affirming district court's conduct in "look[ing] behind the RICO [conspiracy] conviction and consider[ing] the underlying predicate offenses in determining whether [the defendant's RICO conspiracy] offense qualified as a crime of violence"); *Juvenile Male*, 118 F.3d at 1350. In *Juvenile Male*, for example, the court reasoned that "'a conspiracy to commit an act of violence is an act involving a "substantial risk" of violence.'" 118 F.3d at 1350 (*quoting United States v. Mendez*, 992 F.2d 1488, 1490 (9th Cir. 1993) and citing *United States v.Chimurenga*, 760 F.2d 400, 404 (2d Cir. 1985) and *United States v. Doe*, 49 F.3d 859, 866 (2d Cir. 1995)); *see also Doe*, 49 F.3d at 866 (concluding that RICO conspiracy to commit robbery is a crime of violence because "the nature of the conspiracy's substantive objective [ ] provide[s] an indication as to

whether the conspiracy creates the substantial risk that physical force against the person or property of another may be used in the offense"). The *Juvenile Male* Court concluded that the RICO conspiracy charge in that case satisfied the identical residual clause of the Juvenile Delinquency Act[3] because the predicate activity of Hobbs Act robbery was itself a crime of violence. *Id.* at 1350.

After Johnson, RICO conspiracy cannot be a crime of violence under the residual clause and therefore Vera, Sr.'s conviction for RICO conspiracy cannot support his Section 924(c) conviction and sentence.

**1. Following Johnson, RICO Conspiracy Does Not Qualify as a Crime of Violence under the Residual Clause because that Clause Is Void for Vagueness.**

In *Johnson*, the Supreme Court declared the residual clause of the ACCA to be "unconstitutionally vague" because the "indeterminacy of the wide-ranging inquiry required by the residual clause both denies fair notice to defendants and invites arbitrary enforcement by judges." *Johnson*, 135 S. Ct. at 2557. Thus, the Supreme Court concluded, "Increasing a defendant's sentence under the clause denies due process of law." *Id.* The Supreme Court held the residual clause "vague in all its applications," *id.* at 2561, and overruled its contrary decisions in *James v. United States*, 550 U.S. 192 (2007), and *Sykes v. United States*, 131 S. Ct. 2267 (2011). *Johnson*, 135 S. Ct. at 2562-63.

The holding in *Johnson* invalidating the residual clause of the ACCA applies

---

[3] "Crime of violence" for purposes of the Juvenile Delinquency Act is defined by 18 U.S.C. § 16, *see United States v. Juvenile Female*, 566 F.3d 943, 947 (9th Cir. 2009), which, as noted *infra*, is worded and interpreted identically to the definition of "crime of violence" set forth in Section 924(c).

equally to the residual clause of Section 924(c). In *Dimaya v. Lynch*, 803 F.3d 1110 (9th Cir. 2015), the Ninth Circuit held that the identically worded definition of a "crime of violence" in the Immigration and Nationality Act (INA), 8 U.S.C. § 1101(a)(43)(F), is unconstitutionally vague. *Dimaya*, 803 F.3d at 1111. The INA defines a "crime of violence" by reference to the following definition in 18 U.S.C. § 16(b). Section 16(b), like Section 924(c)(3), has a force clause and a residual clause-- indeed, the provisions are identical:  (a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or (b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.  18 U.S.C. § 16; 18 U.S.C. § 924(c)(3).

Although the language of Section 16(b), as incorporated into the INA, is not identical to that of ACCA's residual clause, the Ninth Circuit concluded that Section 16(b) suffered from the same constitutional defects identified in *Johnson*, and was therefore unconstitutionally vague. *Dimaya*, 803 F.3d at 1114-17; *see also United States v. Vivas-Ceja*, 808 F.3d 719, 722-23 (7th Cir. 2015). Because both statutes require a consideration of what kind of conduct the "ordinary case" of the crime involves, and both statutes left uncertainty about the amount of risk required, the Ninth Circuit reasoned that Section 16(b), like ACCA's residual clause, produced too much unpredictability and arbitrariness to comport with due process. *Dimaya*, 803 F.3d at 1116-17. The same is true of the residual clause in Section 924(c)(3)(B), which the Ninth Circuit has recognized is "identical" to Section 16(b)'s residual clause. *See United States v. Amparo*, 68 F.3d 1222, 1226 (9th Cir. 1995); *Delgado-Hernandez* v. *Holder*, 697 F.3d 1125, 1130 (9th Cir. 2012). For interpretive purposes, the Ninth Circuit has treated Section

16(b) as the "equivalent" of Section 924(c)(3). *See Mendez*, 992 F.2d at 1492; *Amparo*, 68 F.3d at 1226 (relying on *United States v. Aragon*, 983 F.2d 1306 (4th Cir. 1993), a Section 16(b) case, to interpret Section 924(c)(3)(B)). At least two district courts have squarely held that Section 924(c)(3)'s residual clause is unconstitutionally vague. See *United States v. Bell*, 2016 WL 344749, at *12-*13 (N.D. Cal. Jan. 28, 2016); United States v. Edmunson, __ F. Supp. 3d __, 2015 WL 9311983, at *3-*5 (D. Md. Dec. 30, 2015) (as amended). This Court should likewise conclude that Section 924(c)(3)(B) is unconstitutionally vague and cannot be used to support Vera, Sr.'s Section 924(c) conviction and sentence.

**2. RICO Conspiracy Is Not a Crime of Violence Under the Force Clause.**

Vera, Sr.'s conviction and sentence for Section 924(c) cannot be salvaged under the force clause because his conviction for RICO conspiracy does not have "as an element the use, attempted use, or threatened use of physical force against the person or property of another," 18 U.S.C. § 924(c)(3)(A). To determine whether a predicate offense qualifies as a "crime of violence" under § 924(c), this Court must use the categorical approach. *See United States v. Amparo*, 68 F.3d 1222, 1225 (9th Cir. 1995); *United States v. Piccolo*, 441 F.3d 1084, 1086-87 (9th Cir. 2006) ("[I]n the context of crime-of-violence determinations under § 924(c), our categorical approach applies regardless of whether we review a current or prior crime."); see also *Descamps v. United States*, 133 S. Ct. 2276, 2283 (2013) (applying categorical approach in case under ACCA, 18 U.S.C. § 924(e)). Under *Taylor*, only the statutory definitions –i.e., the elements – of the predicate crime are relevant to determine whether the conduct criminalized by the statute, including the most innocent conduct, qualifies as a "crime of violence." *Taylor v. United States*, 495 U.S. 575, 599-601 (1990).

Determination of whether a criminal offense is categorically a crime of violence is done by "assessing whether the 'full range of conduct covered by [the statute] falls within the meaning of that term.'" *United States v. Grajeda*, 581 F.3d 1186, 1189 (9ᵗʰ Cir. 2009) (citation omitted). To do this, courts must look "at the least egregious end of [the. . . statute's] range of conduct." *United States v. Baza-Martinez*, 464 F.3d 1010, 1014 (9th Cir. 2006) (*quoting United States v. Lopez-Solis*, 447 F.3d 1201, 1206 (9ᵗʰ Cir. 2006)). In other words, under the categorical approach, a prior offense can only qualify as a "crime of violence" if all of the criminal conduct covered by a statute --"including the most innocent conduct" -- matches or is narrower than the "crime of violence" definition. *United States v. Torres-Miguel*, 701 F.3d 165, 167 (4th Cir. 2012). If the statute punishes some conduct that would qualify as a crime of violence and some conduct that would not, it does not categorically constitute a crime of violence. *Grajeda*, 581 F.3d at 1189.

To be a categorical match to the terms of the force clause in Section 924(c), a statute must require, among other things, proof of violent, physical force. "Physical force" has the meaning given to it by the Supreme Court's 2004 decision in *Leocal v. Ashcroft*, 543 U.S. 1, 9-10 (2004), and its 2010 decision in *Johnson v. United States*, 559 U.S. 133, 140 (2010) (*Johnson I*). In *Leocal*, the Supreme Court held that the phrase "physical force" in that section requires a "violent, active crime[]." 543 U.S. at 11. The *Johnson I* Court expanded on that definition, holding that the phrase "physical force" in ACCA's almost-identical force clause defining "violent felony" means "violent force—that is, force capable of causing physical pain or injury to another person." Johnson I, 559 U.S. at 140. In *Rodriguez-Castellon v. Holder*, 733 F.3d 847 (9th Cir. 2013), the Ninth Circuit applied *Johnson's* "ordinary meaning" of "physical force" to interpret 18 U.S.C. § 16(a), which is identically worded to 18 U.S.C. § 924(c)(3)(A). *Rodriguez-Castellon*, 733 F.3d at

853-54. The same definition of "physical force" thus applies in the Section 924(c)(3) context.

Vera, Sr.'s RICO conspiracy conviction categorically is not a crime of violence under the force clause because it does not have as an element the use or threatened use of any physical force.

**3.   RICO Conspiracy Does Not Have, as an Element, the Use or Threatened Use of Physical Force.**

In a prosecution for a substantive RICO offense, the government must prove "(1) the conduct (2) of an enterprise [engaged in, or the activities of which affect, interstate or foreign commerce] (3) through a pattern of racketeering activity." *Salinas v. United States*, 522 U.S. 52, 62 (1997). A "pattern of racketeering activity" "requires at least two acts of 'racketeering activity,'" which, in turn, is defined to include "murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance or listed chemical . . . , which is chargeable under State law and punishable by imprisonment for more than one year." 18 U.S.C. § 1961(1)(A), (5). In a RICO conspiracy prosecution, the government must only prove that a defendant "knew about and agreed to facilitate the scheme" of racketeering activity. *Salinas*, 522 U.S. at 66. "There is no requirement of some overt act or specific act" in a RICO conspiracy case. *Id*. at 63. Thus, "[t]he RICO conspiracy provision [ ] is even more comprehensive than the general conspiracy offense in [18 U.S.C.] § 371." *Id.* Because the RICO conspiracy statute only requires a showing that the defendant agreed to violate the RICO statute, and does not require the government to demonstrate that the defendant or anyone else involved in the conspiracy committed an overt act in furtherance of the conspiracy or took any action at all, it does not have as an element the use, attempted use, or threatened use of force, let alone the use, attempted use, or threatened use of violent, physical force. For that reason,

it cannot be a crime of violence under the force clause. Cf. *United States v. Luong*, Case No. CR 99-00433, 2016 WL 1588495, *2 (E.D. Cal. Apr. 20, 2016) (dismissing Section 924(c) count post-*Johnson*, reasoning that Hobbs Act conspiracy is not a crime of violence under the force clause because it only requires an agreement between two or more persons, and does not require that the persons actually commit the crime; therefore it does not require the use, attempted use, or threatened use of physical force); *United States v. Edmundson*, __ F. Supp. 3d __, 2015 WL 9582736 (D. Md. Dec. 30, 2015) (same); *United States v. Chandler*, 743 F.3d 648 (9th Cir. 2014) (implying that Nevada conspiracy to commit robbery does not satisfy the force clause and is not an enumerated offense under the ACCA; holding that it qualified under the residual clause), vacated and remanded in light of *Johnson*, 135 S. Ct. 2926 (2015), by 619 F. App'x 641 (9th Cir. 2015); *United States v. White*, 571 F.3d 365, 368-69 (4th Cir. 2009) (holding that North Carolina conspiracy statute, which lacks an overt act element, does not satisfy the force clause of the ACCA because it does not have as an element the use, attempted use, or threatened use of force), abrogated on other grounds by *Johnson*, 135 S. Ct. 2551 (2015); *United States v. Gore*, 636 F.3d 728, 731 (5th Cir. 2011) (same, with respect to Texas conspiracy to commit robbery statute).

In other words, regardless of what the underlying racketeering activity is, a RICO conspiracy charge does not have, as an element, the use, attempted use, or threatened use of force.

G. **Facts During Trial Were Insufficient to Prove that VERA, SR. joined a RICO Conspiracy**

Jury Instruction 37 states the following:

13

One who has no knowledge of a conspiracy, but happens to act in a way which furthers some object or purpose of the conspiracy, does not thereby become a conspirator. Similarly, a person does not become a conspirator merely by associating with one or more persons who are conspirators, nor merely by knowing that a conspiracy exists.

The jury witnessed a parade of photographs of tattooed men. The jury saw letters from gang members. Some letters referred to Vera, Sr. as a victim of police misconduct, random searches and intimidation. The jury heard Vera, Sr.'s contempt for Omar Rodriguez and Christopher Cervantes through his own recorded statements, stating to his son that they "can't crack me." The jury heard George Vera, Jr. explaining to Vera, Sr. how the RICO is prosecuted, and Vera, Sr. asking, "Is my name on that?" The jury heard Vera, Sr. tell Marcus Vera that Norwalk Superior Court is called "no walk" because "nobody walks" there. The jury heard Vera, Sr. advise his son, Marcus to state that the drugs found in his son's apartment were for personal use. The jury heard a July 10, 2010 telephone conference where Vera, Sr. explained that Jimmy Valenzuela showed up at the house looking for a gun; that Vera, Sr. Was intimidated. A murder was committed two weeks later. But there was no evidence heard connecting the murder to Vera, Sr. or anyone else in the Vera family.  The jury heard Vera, Sr. state to Marcus Vera, in a telephone call on September 19, 2011: "I'm holding [a gun] for you." A gun was never found in the possession of Vera, Sr., despite the massive search of his residence.  The jury also heard Vera, Sr. state five times in the same telephone call, that Marcus Vera does not need [a gun] because he is an ex-felon and will only make his life worse.

The jury never saw any evidence or heard any evidence that Vera, Sr. Was involved in any illegal activities. Vera, Sr. associated with two gang members: his two sons.  He learned of their

14

criminal activities after they became incarcerated. Despite twenty years of intrusion and intimidation from the Montebello police, Vera, Sr. was never found to be involved in the planning or participation of illegal gang activities.  The jury was asked to review limited circumstantial evidence showing associations with gang members, and find Vera, Sr. guilty of a RICO conspiracy, which no rational trier of fact should have done.

### 1.  924(c): No Possession of A Firearm

The jury found that George Vera, Sr.  possessed a firearm in furtherance of a racketeering conspiracy, a crime of violence, as alleged in Count One. The government argued at trial that the firearm in question was a gun involving Marcus Vera to which Vera, Sr. stated, "I'm holding it for you."  In the same conversation, Vera, Sr. told Marcus Vera to "keep [his] gun. Vera, Sr. begged his son to stop using firearms as he is an ex felon who will wind up paying a lofty price for his misdeeds.  Vera, Sr. testified during trial that he was referencing a weapon which a neighbor had asked that he take on behalf of Marcus Vera following Marcus Vera's 2011 arrest for possession of two grams of methamphetamine found in his apartment in Pico Rivera.

Jury Instruction 39 states: "A person "possesses" a firearm if the person knows of its presence and has physical control of it, or knows of its presence and has the power and intention to control it."

Using the above standard, or any other theory of possession or constructive possession, Vera, Sr. did not possess a firearm in 2011.  No firearm was found or present in any area within Vera, Sr.'s control. This basic component of the 924(c) charge has always been intended as an enhancement to the underlying crime because the defendant used the weapon during, or for the purpose of committing a crime. No case law supports the government position that the existence

of a gun, can be proven with circumstantial evidence in a 924(c) charge.

Detective Rodriguez declared  under penalties of perjury in 2004 that he knew George Vera based upon his numerous contacts with Vera, Sr., tattoos and field interview cards. During trial, that statement was proven to be false. Additionally, Detective Rodriguez and government prosecutors coached two cooperating witnesses, Ralph Santana and Daniel Saucedo, to testify that they were inside of the same wrong house located at 108 East Cleveland Avenue, while George Vera, Sr. was also present and engaged in illegal activities.[4]  Both of those witnesses, and Detective Rodriguez, swore under oath of that fundamental misrepresentation of fact.[5] Bullets manufactured in 1994 were revealed in February, 2016 as being recovered from Rudy Chacon's tool box in 2011. The niece of Marla Chacon, Yasmin Chacon, testified that Rudy Chacon kept ammunition in the garage. Rudy Chacon died in 2007.   Daniel Saucedo claimed to have stored a gun in the garage at 424 Mines at an unknown date, but likely a Wednesday afternoon. This is the same Daniel Saucedo who lied about being in a home at 108 East Cleveland, did not know Marla Vera's name, as he constantly referred to her as "Margie," did not know what George Vera, Sr. had done for a living for the preceding 20 years, could not describe the tool box where he claims he placed the weapon, could not describe anything about the garage where the tool box was located, did not know the identity or identity of a single resident of George Vera's household. One could only assume and hope that the jury completely disregarded the testimony of Mr. Saucedo.

The ammunition presented to the jury were allegedly found following an extensive search

[4]George Vera, Sr. lived at 112 East Cleveland Avenue for most of his life. 112 East Cleveland was the house next door to 108 East Cleveland.

[5]Another government witness, Montebello Police Officer Julio Calleros, testified to the same misstatement of fact after Assistant United States Attorney Alexander Schwab corrected Officer Calleros, when Calleros testified that Vera, Sr. resided at 114 East Cleveland.

for a .32 caliber firearm which the police believed belonged to Marcus Vera.  No firearms were found during the search. No .32 caliber ammunition was found in the home.  Detective Rodriguez never provided a receipt for the allegedly seized ammunition to George Vera, Sr. or anyone else in the home.[6]  No photographs of the tool box or the items allegedly seized were taken. No report was made regarding the contents of the tool box when the ammunition was allegedly seized.  The fact that the bullets were revealed in February, 2016, several months  after Vera, Sr. had rejected the government offer for a CASA program, and from an officer who was caught manipulating untruthful  testimony on several occasions during this trial, should have had a profound impact on Rodriguez' credibility by any reasonable juror, because the bullets may not have come from 424 Mines.

Perhaps the bullets were actually found by Rodriguez in the garage at 424 Mines in December, 2011. Perhaps the failure by the government to disclose the existence of the ammunition until the fourth trial setting in this matter was just another innocent mistake on a very long list of mistakes.  Not only did the owner of the home for the previous 30 years own weapons and ammunition, but there were eleven other occupants of the home during the period that George Vera was a resident and prior to the December 1, 2011 search of his home. (2007-2011). Any of those occupants could have left ammunition in the tool box.  Even so, George Vera was not convicted of possession of ammunition in furtherance of a crime of violence.

---

[6]The government argued that the bullets must have arrived after 2010, because they would have been found as Detective Rodriguez was looking through the backyard shed. This argument supports the position that the only possible period in which Vera, Sr. may have possessed a gun was around the time of the September 19, 2011 recorded telephone call between Vera, Sr. and Marcus Vera.

**2.  Possession Of The Firearm Must Be In Furtherance of the Crime of Violence**

Interpretation of the "in furtherance" requirement has spawned considerable case law. All Ninth Circuit cases refer to the possession of an actual gun, rather than a potential gun, as in this case.  Not only that, the Ninth Circuit requires  "proof that the defendant possessed the weapon to promote or facilitate the underlying crime" in order to sustain a conviction under § 924(c). *United States v. Krouse*, 370 F.3d 965, 967 (9th Cir. 2004). The determination of whether a gun is possessed in furtherance of a crime is based upon the totality of circumstances, where there must be a nexus between the *guns discovered* and the criminal activity in which the defendant was involved.  *Krouse*, 370 F.3d at 968.  *See also United States v. Mann*, 389 F.3d 869 (9th Cir. 2004). In *Mann*, the Court held that the relevant nexus between the gun and the crime was not present. The guns were locked in a safe in a truck, the key was kept in the area of the campsite [where the defendants] slept, and the guns were not easily accessible in an area where drugs were manufactured and stored.  *Id.* at 880. See also *United States v. Rios*, 449 F.3d 1009, 1015-16 (9th Cir. 2006) (holding that any inference of nexus was weakened by the fact that the gun was "hidden and unloaded and no ammunition was found").

> "Were we to subscribe to the government's theory that the facts presented here are sufficient, we would render possession in furtherance and mere possession nearly indistinguishable. Any person involved in a [RICO] conspiracy who happens to have a weapon at home, for whatever purpose, could be convicted under § 924(c)(1)(A). This outcome, however, is precisely what the House Report, *Krouse,* and *Mann* caution against.

*Rios*, 449 F.3d at 1016.

The bottom line is that it is a fact-based inquiry into the nexus between the possession of the firearm and the crime of violence, including such factors as "proximity, accessibility and strategic location of the firearms in relation to the locus of [violent] activities."  *United States v.*

18

*Hector*  474 F.3d 1150, 1156-57 (9th Circuit 2007).The government must clearly show that a firearm was possessed to advance or promote the commission of the underlying offense. The mere presence of a firearm in an area where a criminal act occurs is not a sufficient basis for imposing this particular mandatory sentence. Rather, the government must illustrate, through specific facts, which tie the defendant to the firearm, that the firearm was possessed to advance or promote the criminal activity.  *Id.* At 1157.

The natural meaning of "in furtherance of" is "furthering, advancing or helping forward." The negative implication of this definition is that the mere presence of a weapon at the scene of a crime, without more, is insufficient to prove that the gun was possessed "in furtherance of" the crime. *Id.*

The obvious questions which were never answered by the government remain:

What criminal activity was transpiring when the alleged weapon was in the possession of George Vera, Sr. in September, 2011?

How was the weapon possessed in 2011 intended by Vera, Sr. to further the goal of continued crime(s) of violence?

Assuming *arguendo* that Vera, Sr. Possessed a gun, as decided by the jury, the government was required to present a viable theory as to how the gun furthered the crime of violence. *Id* .  No evidence related to the alleged 2011 possession of a firearm was produced which would show that any gun was possessed by George Vera in order to commit a crime of violence.

Based upon the facts of this case, it is extremely likely that the government hoped that the jury would find that a firearm was possessed in furtherance of drug trafficking crimes, because at

least there was some evidence that Marcus Vera was selling drugs in 2011 and 2012. The government never proved 1) that there was an actual gun in the possession of George Vera, Sr. in 2011; or 2) that such gun was possessed so that George Vera, Sr. or anyone else for that matter, could commit future violent activities on behalf of the gang.

The government possibly attempted to create such a nexus in its constant playing of the July 10, 2010 telephone call where Marla Vera and Vera, Sr. discussed Jimmy Valenzuela's inquiring about Marcus Vera guns at the Vera residence. But in 2010, there was no evidence that Vera, Sr. possessed a firearm. Further, although the government will argue that it alternatively offered evidence of an aiding and abetting theory, a question remains as to who actually possessed the gun. That fact was never proven. Certainly, no evidence was offered which connects the July, 2010 recorded call to the murder of Jimmy Jimenez two weeks later. Even if there were a connection, there is no way that a rational trier of fact could conclude that Vera, Sr. aided and abetted anyone based upon Vera, Sr.'s spoken words in the July 10, 2010 telephone call.

The government argued in summation that the possession of the firearm by Vera, Sr. was in September, 2011. The only theory articulated by the government in relation to the alleged possession in September, 2011 was that a weapon was being held for Marcus Vera. Marcus Vera was in custody for drug possession in 2011.

Assuming *arguendo* that a 1962(d) conspiracy is a crime of violence, no evidence was offered by the government to show that a gun was possessed in 2011 in furtherance of a crime of violence. The Jury exonerated Vera, Sr. of any involvement in drug trafficking.

It is quite possible that the jury mistakenly believed that the gun in question was either 1)

a bee bee gun, which is not a firearm, found in the shed at 424 Mines in 2010 during a random

search by Omar Rodriguez,[7] or 2) a non-gun which Jimmy Valenzuela sought in July, 2010,

which was never alleged to be in the possession of Vera, Sr. In 2011, there were no allegations

of criminal activities of the gang involving crimes of violence. Marcus Vera was a drug dealer in

2011 and 2012.  The jury found Vera, Sr. not guilty of drug dealing.  The jury did not find that

Vera, Sr. was engaged in a pattern of drug dealing activities in Count One. Therefore, even if the

jury could conclude that Vera, Sr. possessed an unknown type of gun at an unknown date in 2011,

at an unknown location, there is no way that a rational trier of fact could conclude that in 2011,

George Vera possessed a weapon so that he could participate in crimes of violence.

### H.  George Vera Poses No Threat To The Community

In all cases,  where a defendant has been found guilty, in order to be released, the Court

must find by clear and convincing evidence that the person is not likely to flee or pose a danger to

any other person in the community if released under section 3142(b) or (c).  18 U.S.C. §

3143(a)(1).

As stated, *supra*, if George Vera, Sr. posed a threat to the community, the government

would have never offered him the CASA program. Vera, Sr. chose not to accept the government

offer because he believed, and still believes, that he is not guilty of the RICO conspiracy. He

knew that he was not guilty of drug dealing.  George Vera was not charged with the 924(c) count

until long after he rejected the CASA offer, and despite the fact that he never possessed a firearm

during the applicable time period.  He is still employed as an electrician, serving as the primary

---

[7] 18 U.S.C. 921(a)(3) may be used to distinguish a firearm, which expels a projectile with an explosion,  from a bee bee gun, or paint ball gun, both which expel a projectile with compressed air.

income source for his household.  He is attempting to pay as many bills as possible before he is no longer able to do so.  His two sons are serving substantial prison sentences. He is not actively involved in the Southside Montebello gang. He has fulfilled all conditions of supervised release. The government has not objected to his travel outside of the district for employment opportunities.  Those who know George Vera, like the eleven witnesses who testified in his behalf at trial, could swear that he poses no threat to the community.

**III. CONCLUSION**

Vera, Sr. has presented several "fairly debatable issues," which if found in our favor, would result in granting a motion for judgment of acquittal or new trial.  *United States v. Handy*, 761 F.2d 1279 ( 9th Cir. 1985). He also poses no danger to the community if he remains free, subject current conditions of release.  Vera, Sr. respectfully requests this Honorable Court deny the government's request for remand and permit Vera, Sr. to remain on bond until he is sentenced in this matter.

DATED this 20th day of May, 2016.

Respectfully submitted,

McNICHOLAS LAW OFFICE

By:_____/s/_____
JOHN N. MCNICHOLAS, ESQ.
464 Palos Verdes Blvd.
Redondo Beach, CA 90277
Attorney for GEORGE VERA, SR.